UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-20295-Cr-ALTONAGA/DAMIAN

UNITED STATES OF AMERICA

v.

ARASHIO HARRIS,

        Defendant.
_____/

## STIPULATED FACTUAL BASIS

The United States and ARASHIO HARRIS ("the defendant") hereby stipulate and agree that had this matter proceeded to trial, the United States would have offered evidence and testimony sufficient to establish a factual basis beyond a reasonable doubt for the crime charged, including the following:

The defendant, who resided in Miami-Dade County, in the Southern District of Florida, was at all relevant times employed by the Miami-Dade Corrections and Rehabilitation Department as a Correctional Sergeant. The defendant was the owner and President of both The Good Family Property Solutions Inc. ("Good Family"), which was a Nevada corporation that was registered with the State of Florida as a Foreign Profit Corporation, and Flying Lions LLC ("Flying Lions"), which was a Nevada limited liability company that was registered with the State of Florida as a Foreign Limited Liability Company.

1

**The SBA and the CARES Act**

The United States Small Business Administration ("SBA") was an agency of the executive branch of the Government of the United States. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 that was designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The CARES Act also authorized and provided funding to the SBA to provide Economic Injury Disaster Loans ("EIDLs") to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.

**The Paycheck Protection Program ("PPP")**

In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP Borrower Application Form (SBA Form 2483), the business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll; and (b) number of employees. The application and the supporting documentation submitted in connection with the application were used to calculate the amount of money the applicant was eligible to receive under the PPP.

2

The PPP also allowed a qualifying business that had obtained a PPP loan in 2020 and experienced a required revenue reduction in 2020 to obtain a second PPP loan in 2021. These second PPP loans were also known as "second draw" loans. Starting on or about March 4, 2021, small businesses could apply for this second draw loan by using a PPP second draw application (SBA Form 2483-SD) that provided their average monthly payroll and their number of employees. This second draw application and the supporting documentation submitted were used to calculate the amount of second draw money the applicant was entitled to receive under the PPP.

PPP loan applications were processed by participating lenders. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

The entity identified in the Information as "Lender 1" was an SBA-approved lender for PPP loans named Fountainhead Small Business Finance, LLC ("Fountainhead"). Fountainhead processed PPP loan applications from applicants located throughout the United States, and its servers were located outside the state of Florida.

The entity identified in the Information as "The Financial Technology Company" was SmartBiz. SmartBiz operated an online platform that received PPP loan applications from throughout the United States. SmartBiz was not a PPP lender, but rather was a business that received and processed PPP applications for multiple SBA-

approved PPP lenders. It would make qualified PPP applications available to one of the lenders that retained its services for the lender's review, final approval, and funding of the PPP loan.

The entity identified in the Information as "Lender 2" was an SBA-approved lender for PPP loans named Customers Bank that was based in Pennsylvania. Customers Bank processed PPP loan applications from applicants located throughout the United States and it contracted with SmartBiz to receive PPP applications for funding. Customers Bank's servers were located outside the state of Florida.

### The Economic Injury Disaster Loan Program ("EIDL")

The COVID-19 EIDLs were intended to allow eligible small business to meet their financial obligations and operating expenses that could have been met had the disaster not occurred. These COVID-19 EIDLs also included the possibility of an advance of up to $10,000 for qualifying applicants that the applicant was not obligated to repay.

In order to obtain a COVID-19 EIDL, a qualifying for-profit business was required to submit an EIDL application to the SBA and provide information about its operations, including its gross revenues and number of employees, for the 12-month period preceding January 31, 2020. The applicant also was required to certify under penalty of perjury that all the information in the application was true and correct.

EIDL applications were submitted directly to and processed by the SBA. The amount of the loan approved and any advance provided was determined based, in part, on the information provided in the application concerning the number of employees and cost of goods sold. Any EIDL funds were issued directly by the United States

government to the applicant's bank account.

### The Defendant's Fraudulent PPP and EIDL Applications

At all relevant times, the defendant maintained and was the sole signatory on the corporate checking account for Good Family at Wells Fargo Bank ("Wells Fargo"). The defendant also claimed to be the 100% owner of Good Family in his account application. The defendant also maintained a corporate checking account for Flying Lions at Wells Fargo Bank ("Wells Fargo"). The defendant claimed to be a 99% owner of Flying Lions in this account application, and he was a signatory on that account. Wells Fargo is identified in the Information as "the Bank" and it did business throughout the United States, including maintaining branches in the Southern District of Florida.

The person identified in the Information as "Individual 1" was a resident of Miami-Dade County, Florida, who provided tax preparation services. Individual 1 assisted the defendant with the preparation and submission of the applications for the PPP loans, EIDL, and EIDL advance in the name of Good Family and the EIDL in the name of Flying Lions that the defendant received. In return for the assistance, the defendant paid Individual 1 a portion of the loan proceeds after they were received by Good Family and Flying Lions.

On or about April 3, 2020, the defendant submitted, and with the assistance of Individual 1 caused to be submitted, to the SBA, via interstate wire communications, a false and fraudulent EIDL application claiming to be the 100% owner of Good Family. That EIDL application falsely certified that for the twelve (12) month period prior to January 31, 2020, Good Family had gross revenues of approximately $130,000 and 9

employees.

As a result of this false and fraudulent EIDL application, on or about April 27, 2020, Good Family received from the SBA a $9,000 EIDL advance, and on or about May 31, 2020, approximately $14,500 in EIDL loan proceeds were provided by the SBA to Good Family. These fraudulently obtained EIDL funds were provided via Electronic Funds Transfers to Good Family's account at Wells Fargo. These Electronic Funds Transfers involved the use of interstate wire communications.

On or about June 30, 2020, the defendant submitted, and with the assistance of Individual 1 caused to be submitted, to the SBA, via interstate wire communications, a false and fraudulent EIDL application claiming to be the 100% owner of Flying Lions. That EIDL application falsely certified that for the twelve (12) month period prior to January 31, 2020, Flying Lions had gross revenues of approximately $480,452 and 10 employees. During the period of time when this EIDL application was under review by the SBA, the defendant had multiple conversations with SBA representatives regarding the ongoing review process leading up to the eventual approval and funding of the EIDL by SBA.

As a result of this false and fraudulent EIDL application and the subsequent communications with the defendant, on or about February 8, 2021, Flying Lions obtained from the SBA approximately $150,000 in EIDL loan proceeds. These fraudulently obtained EIDL funds were provided via Electronic Funds Transfer to Flying Lions' account at Wells Fargo. This Electronic Funds Transfer involved the use of interstate wire communications.

On or about July 9, 2020, the defendant submitted, and with the assistance of Individual 1 caused to be submitted, to Fountainhead a false and fraudulent PPP 2020 loan application (SBA Form 2483) claiming to be the President, Manager, and 100% owner of Good Family. That PPP loan application falsely and fraudulently represented that Good Family's monthly payroll was approximately $51,710 and that Good Family had 10 employees, and as part of the application process, the defendant submitted and caused to be submitted documents including: a false and fraudulent IRS Form 1120 for tax year 2019 claiming that Good Family had total income of approximately $1,050,152 and paid wages and salaries of approximately $768,932; a false and fraudulent IRS Form 944 for tax year 2019 claiming salaries and wages of $620,527; numerous false and fraudulent IRS Forms W-2 showing large wage payments to supposed employees; and, false and fraudulent Good Family payroll records for those supposed employees. As part of the review and approval process for this application, Fountainhead electronically transmitted this PPP application to the SBA via interstate wire communications.

As a result of this false and fraudulent PPP application, on or about July 13, 2020, Good Family obtained approximately $129,275 in PPP loan proceeds from Fountainhead that were electronically deposited into the Good Family account at the Wells Fargo.

On or about February 26, 2021, the defendant began the process of seeking a second draw PPP loan using the SmartBiz application portal. During this process, the defendant submitted, and with the assistance of Individual 1 caused to be submitted, to SmartBiz, via interstate wire communications, a false and fraudulent 2021 PPP second draw loan application (SBA Form 2483-SD) claiming to be the President and 100% owner

of Good Family. That PPP loan application falsely and fraudulently represented that Good Family's monthly payroll was approximately $51,710 and that Good Family had 10 employees. As part of the application process, the defendant submitted and caused to be submitted documents including: a false and fraudulent IRS Form 1120 for tax year 2019 claiming that Good Family had total income of approximately $1,050,152 and paid wages and salaries of approximately $768,932; a false and fraudulent IRS Form 940 for tax year 2019 claiming that Good Family paid approximately $620,527 to all employees; and, false and fraudulent Good Family payroll records for nine supposed employees including the defendant himself. During this application process, the defendant himself was in direct communication with SmartBiz.

This application ultimately was provided by SmartBiz to Customers Bank for final review and funding, and as a result of this false and fraudulent PPP second draw application, on or about April 29, 2021, Good Family obtained approximately $129,276 in PPP loan proceeds from Customers Bank that were electronically deposited into the Good Family account at Wells Fargo. This electronic deposit involved the use of interstate wire communications.

(remainder of page intentionally left blank)

The United States and the defendant agree that this Stipulated Factual Basis, while not containing all facts known to the United States, is sufficient to satisfy all the elements establishing the guilt of the defendant to the crime charged in the Information.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/9/2023        By: _____
                          Edward N. Stamm
                          Assistant United States Attorney

Date: 8/9/23          By: _____
                          Mark R. Eiglarsh, Esq.
                          Attorney for Defendant

Date: 8/9/23          By: _____
                          Arashio Harris
                          Defendant